Erica **CARPENTER**, Plaintiff,

v.

**REFRIGERATION SALES CORP.,
et al., Defendants.**

No. 1:98–CV–940.

United States District Court,
N.D. Ohio,
Eastern Division.

May 5, 1999.

Jeffrey A. Leikin, Nurenberg, Plevin, Heller McCarthy, Cleveland, OH, Stephen S. Zashin, Zashin & Rich, Cleveland, OH, for Erica Carpenter, plaintiff.

Joel I. Newman, Newman & Newman, Cleveland, OH, for Refrigeration Sales Corporation of Cleveland, William J. Wagner, defendants.

William W. Falsgraf, Sr., Baker & Hostetler, Cleveland, OH, for William W Falsgraf, neutral.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff Erica Carpenter brings this action against her former employer, Refrigeration Sales Corporation ("Refrigeration Sales"), asserting claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611 *et seq.* ("FMLA"), and Ohio law, based on her discharge from the company. Carpenter now moves for partial summary judgment. For the reasons set forth below, Carpenter's motion for partial summary judgment is **GRANTED** in part and **DENIED** in part.

### I. Background

The following facts are undisputed. Carpenter began working for Refrigeration Sales in July of 1990 as an accounts receivable clerk. Throughout her employment, Carpenter was supervised by William Wagner, who was in charge of Refrigeration Sales' Human Resources department and was responsible for discharging employees.[1] During her employment with Refrigeration Sales, Carpenter consistently received excellent employment reviews from Wagner. In fact, based on her performance, Carpenter was offered a transfer to an accounts payable position.

On April 7, 1997, Carpenter became ill and telephoned Refrigeration Sales to explain that she was feeling ill and would not be coming into work that day. That same day, Carpenter went to her physician, Dr. Muneer Assi, who diagnosed her as having hepatitis following an examination. On April 8, 1997, Carpenter informed Refrigeration Sales that she had been diagnosed with hepatitis and would, thus, would be unable to report to work for the remainder of the week.

Refrigeration Sales did not request any further explanation or certification from Carpenter regarding her medical condition. On April 10, 1997, Carpenter saw her physician once more, and he confirmed her hepatis diagnosis. Carpenter then personally spoke with Wagner and told him that she did indeed have hepatitis. Wagner told Carpenter that, because of her absences, she was no longer eligible to transfer to the accounts payable position. On April 11, 1997, Carpenter received a termination letter, signed by Wagner, which stated that she was being terminated "due to [he]r frequent absences."

On April 21, 1998, Carpenter filed this action, asserting claims under the FMLA, Ohio's Fair Employment Practices Act, Ohio Rev.Code § 4112.99, and Ohio public policy. Carpenter now moves for summary judgment as to the liability portion of her FMLA and public policy claims. For the reasons set forth below, Carpenter's motion is **GRANTED** with respect to her FMLA claim. The Court declines to exercise jurisdiction over Carpenter's remaining state claims, pursuant to 28 U.S.C. § 1367. Only the issue of damages remains.

### II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure dictates that, where summary judgment is sought:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. In this role, Wagner had responsibility for the company's compliance with the FMLA and other federal anti-discrimination laws, although, by his own admission, he never received any training on the FMLA.

moving party is entitled to a judgment as a matter of law.

While all evidence must be viewed in the light most favorable to the non-moving party, summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery, as required by Fed.R.Civ.P. 56(f), if the respondent [does] not 'put up,' summary judgment [is] proper." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

## III. Law and Analysis

 Under the FMLA, an eligible employee is entitled to take up to 12 weeks of leave during any 12–month period for one or more of the following reasons:

(A) Because of the birth of a son · or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612. In order to trigger application of the FMLA, an employee must provide her employer with notice that she needs FMLA-qualifying leave. *See, e.g., George v. Associated Stationers,* 932 F.Supp. 1012, 1016 (N.D.Ohio 1996). To satisfy this requirement, the employee need not expressly invoke her FMLA rights, but need only request leave for one of the above reasons. 29 C.F.R. § 825.303(b) (stating that an "employee need not expressly assert rights under the FMLA, or even mention the FMLA, but may only state that leave is needed"). *See also George,* 932 F.Supp. at 1016 (stating that the employee is "not required to assert rights under the Act"). The burden then shifts "to the employer to determine whether leave was sought under the Act and to obtain any additional information." *George* at 1016. If the employer requires medical certification, it is required to so inform the employee. *Id.*

Defendants concede that Carpenter was an eligible employee and that Refrigeration Sales was a covered employer. Defendants further concede that Carpenter suffered from a serious health condition, that she provided the requisite notice of her need for leave, and that they failed to request further information or medical certification of her medical condition and necessity for leave. Essentially, therefore, defendants concede all of the elements necessary for Carpenter to establish a violation of the FMLA.[2] Defendants focus their arguments on *whom* can be held liable for violating the FMLA. Defendants argue that Wagner cannot be held individually liable for violating the FMLA.

Defendants do not dispute that supervisors and manages can be held individually liable under the FMLA under appropriate circumstances. Indeed, this is the majority view. *See Bryant v. Delbar Products, Inc.,* 18 F.Supp.2d 799, 807 (M.D.Tenn. 1998) (observing that while "[t]he Sixth Circuit has not directly addressed this issue[,] ... the majority of courts that have reached this issue have held that individual liability does exist under the FMLA") (citing *Eldridge v. Porelon/Micropore, Inc.,* No. 2:97–0053, slip op. at 17 (M.D.Tenn.

---

**2.** In his deposition, Wagner himself conceded that Carpenter's termination was in violation of the FMLA:

 Q: As you sit here today knowing what you know now, did you violate the Family Medical Leave Act when you terminated Erica Carpenter?

 A: Yes.

June 9, 1998)); *Rupnow v. TRC, Inc.,* 999 F.Supp. 1047, 1048 (N.D.Ohio 1998); *Stubl v. T.A. Systems, Inc.,* 984 F.Supp. 1075, 1084 (E.D.Mich.1997); *Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 629 (S.D.N.Y.1996); *Knussman v. Maryland,* 935 F.Supp. 659, 664 (D.Md.1996); *Freemon v. Foley,* 911 F.Supp. 326, 332 (N.D.Ill. 1995); *Reich v. Midwest Plastic Eng'g, Inc.,* 1995 WL 478884, at *5–6 (W.D.Mich. June 6, 1995). *See also Meara v. Bennett,* 27 F.Supp.2d 288, 290 (D.Mass.1998) (collecting additional cases).

Defendants argue, however, that Wagner cannot be held individually liable under the circumstances *of this case.* In support, defendants contend that Carpenter failed to tender such a claim in her motion for partial summary judgment and, assuming such a claim was tendered, that she failed to show that Wagner exercised sufficient control over Carpenter to trigger individual liability for the termination decision. Neither argument has merit.

First, Carpenter clearly referred to Wagner in her motion for partial summary judgment, as indicated by the fact that she uses the plural "defendants," rather than the singular "defendant." Indeed, it seems rather curious that defendants could argue that such a claim was not tendered for summary judgment when they were able to recognize the claim for purposes of responding to it.

In support of their second argument, defendants rely on *Rupnow v. TRC, Inc.,* 999 F.Supp. 1047 (N.D.Ohio 1998). Rupnow is of no service to defendants. In *Rupnow,* the plaintiff sued both her former employer, TRC, and its president, Terry Ross, under the FMLA. Ross moved to dismiss the claims against him, arguing, *inter alia,* that, like Title VII, the FMLA does not permit individual liability to be imposed on supervisors or managers. Ross further argued that, even if supervisors could be held individually liable, such liability could not be imposed on him because he was not the plaintiff's supervisor and did not exercise control over the plaintiff's ability to take protected leave.

*Id.* at 1048. The district court denied the motion to dismiss. The Court easily disposed of the first. argument, stating that "the weight of authority favors individual liability for a supervisor where the supervisor 'exercise[s] sufficient control over Plaintiff's ability to take protected leave.' " *Id.* (citing *Freemon v. Foley,* 911 F.Supp. 326, 331 (N.D.Ill.1995)). The Court then concluded that whether TRC's president exercised sufficient control over Rupnow's ability to take protected leave required further development of the facts, and, thus, could not be resolved on a motion to dismiss. *Id.*

■ Here, there is no question that Wagner was Carpenter's supervisor. Nor is there any question that he exercised sufficient control over the decision to terminate her. Wagner was the head of Refrigeration Sales' human resources department. He administered the FMLA and spoke with Carpenter about her illness. Finally, and most significantly, he made the decision to terminate Carpenter, as reflected in the termination letter signed by Wagner. These facts are undisputed; indeed, they were admitted by Wagner during his deposition.

## IV. Conclusion

Accordingly, Carpenter is entitled to summary judgment as to liability against both Refrigeration Sales and William Wagner on her FMLA claim. Carpenter also has moved for summary judgment as to liability on her public policy claim asserted under *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). Pursuant to 28 U.S.C. § 1367, the Court declines to exercise jurisdiction over this claim and Carpenter's motion for summary judgment is, thus, denied with respect to this claim. The Court also declines to exercise jurisdiction, pursuant to 28 U.S.C. § 1367, over Carpenter's remaining state claim, asserted under Ohio's Fair Employment Practices Act, Ohio Rev.Code §§ 4112.02 and 4112.99. Accordingly, the state claims are

dismissed without prejudice; they may be brought in state court, if appropriate.[3]

Only the question of the amount of damages to which Carpenter is entitled under the FMLA remains. This case is hereby referred to Magistrate Judge Perelman for purposes of conducting a settlement conference in an attempt to resolve that issue. The settlement conference will take place on **Thursday, May 13, 1999, at 3:00 p.m., in Room 424,** and is being held *in lieu of the pre-trial conference* scheduled to occur on May 12, 1999. Accordingly, the pre-trial conference is canceled. Parties with full settlement authority shall attend the settlement conference, unless Magistrate Judge Perelman otherwise directs. The trial date remains in effect, but will be vacated upon notification that the matter has been resolved by the parties.

**IT IS SO ORDERED.**

---

**3.** The Court is particularly disinclined to exercise jurisdiction over Carpenter's public policy claim. While it is clear that such a claim does exist under Ohio law, the nature and scope of any such claim is less clear. This is particularly so when one tries to determine the measure of damages available under such a claim. Where state law remains in the developmental stages, that development is best left to the state courts.