Elaine Sechrest **BREWER**, Plaintiff,

v.

**JEFFERSON–PILOT STANDARD LIFE INSURANCE COMPANY, a/k/a Jefferson–Pilot Life Insurance Company, d/b/a Jefferson–Pilot Financial; and Felicia Cooper, Defendants.**

No. 1:03CV01161.

United States District Court, M.D. North Carolina.

Aug. 18, 2004.

Douglas A. Rubel, Johanson Berenson, LLP, Cary, NC, for Plaintiff.

Brian Henry Alligood, Sharpless & Stavola, P.A., Greensboro, NC, Debra Weiss Ford, Devine Millimet & Branch, P.A., North Hampton, NH, for Defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff Elaine Brewer brings this action alleging that she was wrongfully terminated from her employment with Defendant Jefferson–Pilot Standard Life Insurance Company ("Jefferson–Pilot"). This matter is currently before the Court on Defendants' Motion for Partial Judgment on the Pleadings. [Doc. # 11]. For the reasons set forth below, Defendants' Motion will be GRANTED in part and DENIED in part.

## I.

The facts, in the light most favorable to the Plaintiff, are as follows: Ms. Brewer worked for Defendant Jefferson–Pilot for approximately twenty-nine years prior to her termination. In early July 2002, Ms. Brewer requested leave from work in order to have eye surgery performed. This surgery involved the replacement of a prior lens implant, a procedure "which required inpatient care in a hospital and/or continuing treatment by a health care provider." (Compl.¶ 8.) She estimated that she would need to be out of work for one to three weeks, and Jefferson–Pilot granted this leave request. At the time of her request, Jefferson–Pilot did not advise Ms. Brewer of her rights under the Family and Medical Leave Act ("FMLA").

Ms. Brewer provided Jefferson–Pilot with status reports on her health through both her direct supervisor and Defendant Felicia Cooper, the Senior Human Resources Manager at Jefferson–Pilot. At the end of her three-week leave period, Ms. Brewer's eyes had not sufficiently healed to permit her to return to work. Jefferson–Pilot mailed Ms. Brewer written notice of her rights under the FMLA on July 31, 2002. On that same day, Ms. Cooper spoke with Ms. Brewer by telephone and requested the names of Ms. Brewer's health care providers. Ms. Cooper contacted Ms. Brewer's health care providers and asked them to complete medical certification forms to document Ms. Brewer's absence.

On Friday, August 2, 2002, before Ms. Brewer's health care providers had completed the medical certification forms, Ms. Cooper accused Ms. Brewer of lying about her medical condition. Despite Ms. Brewer's indications that she would be ready to return to work on Monday, August 5, 2002, Ms. Cooper terminated Ms. Brewer for the stated reasons of dishonesty and insubordination. Ms. Brewer's health care provider provided Jefferson–Pilot with the completed medical certification forms on or about August 5, 2002. The forms indicated that Ms. Brewer had been under medical care through August 2, 2002.

Ms. Brewer filed this action on December 9, 2003. The Complaint seeks relief for violations of the FMLA, wrongful discharge, and breach of employment contract. In support of her state law claims, the Complaint alleges that the Defendants had in place a discipline policy and that the discipline policy was not followed in dealings with Ms. Brewer. Had the discipline policy been followed, Ms. Brewer contends that she would have been disciplined, not terminated, for insubordination.

## II.

Defendants' Motion for Partial Judgment on the Pleadings addresses all three counts of the Complaint. Specifically, Defendants have moved for judgment on the pleadings for the wrongful discharge claim and the breach of contract claim in their entirety, and for the FMLA claim as against Ms. Cooper. Therefore, the only claim not addressed in the motion is the FMLA claim against Jefferson–Pilot.

■ As an initial matter, Ms. Brewer failed to timely respond to the Defendants' Motion, which was filed on February 27, 2004. The Clerk of Court mailed a letter to Ms. Brewer on April 22, 2004, explaining that no response had been received and that the motion would be treated as unopposed unless excusable neglect could be shown. [Doc. # 15]. Ms. Brewer's response was not filed until May 6, 2004, approximately two weeks after the Clerk's letter was mailed. In a letter accompanying the late response, Ms. Brewer's counsel explained that the response had been completed on March 14, 2004,[1] but inadvertently had not been mailed by his staff.

A party who fails to timely file a response to a pending motion waives the right to later file that response unless she is able to show excusable neglect. Local Rule 7.3(k). Where no excusable neglect is shown, the motion will be treated as uncontested and may be granted without further notice. *Id.* In the instant case, even assuming that Ms. Brewer's response was completed on March 14, 2004 and that the failure to timely mail it was excusable, no explanation has been proffered for the two week delay between the Clerk's letter and Ms. Brewer's filing. Accordingly, the response will not be considered and the

Motion for Partial Judgment on the Pleadings will be deemed uncontested. While the uncontested motion could be granted without further notice, in the interest of justice, the merits of the motion will be addressed below.

## III.

■ In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), facts presented in the pleadings and the inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *Edwards v. City of Goldsboro,* 178 F.3d 231, 248 (4th Cir.1999). A motion for judgment on the pleadings is determined by the same standard applied to a 12(b)(6) motion to dismiss for failure to state a claim. *Burbach Broadcasting Co. of Delaware v. Elkins Radio,* 278 F.3d 401, 405 (4th Cir.2002). Therefore, the motion should only be granted if, after taking all well pleaded allegations in the complaint as true, the plaintiff can prove no set of facts entitling her to relief. *Edwards,* 178 F.3d at 244.

### A.

The Defendants first argue that Ms. Brewer has failed to state facts supporting an FMLA claim against Ms. Cooper. The basis for their contention is that the FMLA only governs the actions of employers and that Ms. Cooper is not an employer as defined by the FMLA. Because this Court cannot conclude that Ms. Cooper is not an employer as defined by the FMLA, Defendants' Motion will be DENIED as to the FMLA claim.

The FMLA defines an employer as:

---

**1.** This Court notes that the response shows an original date of April 14, 2004, not March 14, 2004.

"any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(1). The term "employer" also includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees·of such employer." 29 U.S.C. § 2611(4)(A)(ii)(1).

 The plain language of the statute, the starting point in statutory analysis,[2] indicates that supervisors may be individually liable for acts taken in the interest of their employer. Further, regulations issued by the Department of Labor explain that, "[a]s under the [Fair Labor Standards Act] FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 CFR § 825.104(d).

In interpreting the statutory language, the majority of federal courts addressing the issue have concluded that individuals may be held liable under the FMLA. *See, e.g., Oby v. Baton Rouge Marriott,* 329 F.Supp.2d 772, 779 (M.D.La.2004) (noting that the majority of courts facing the issue have found that supervisors may be held individually liable for FMLA violations); *Keene v. Rinaldi,* 127 F.Supp.2d 770, 776 (M.D.N.C.2000) (noting that the structure of the FMLA indicated an intent to provide individual liability for "persons acting on behalf of private employers" in order to avoid circumvention of the law); *Buser v. Southern Food Serv., Inc.,* 73 F.Supp.2d 556, 566–68 (M.D.N.C.1999); *Carpenter v. Refrigeration Sales Corp.,* 49 F.Supp.2d

1028, 1030–31 (N.D.Ohio 1999) (noting that the majority view is that supervisors and managers may be held individually liable, and providing citations).

Some courts have noted that the FMLA definition of employer closely resembles the definition of employer found in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203,[3] and have looked to decisions based on the FLSA for guidance on Congressional intent. *See, e.g., Wascura v. Carver,* 169 F.3d 683, 685–87 (11th Cir. 1999) (interpreting the FMLA to exclude liability for individual *public* officials); *Freemon v. Foley,* 911 F.Supp. 326, 332 (N.D.Ill.1995) (finding that the term employer included everyone who controlled in some way the plaintiff's leave of absence and return to work). Supervisors may be held individually liable for violations of the FLSA. *See, e.g., Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987) (explaining that the definition of employer is broad enough to include employees who "had supervisory authority over the complaining employee and [were] responsible in whole or part for the alleged violation."); *Enright v. Cgh Med. Ctr.,* 1999 WL 24683, at *6, 1999 U.S. Dist. LEXIS 370, at *19–21 (N.D.Ill. Jan. 12, 1999) (unreported) (finding an issue of fact as to whether a Director of Human Resources could be held liable where he was at least partly responsible for implementing the offending time policy and for finalizing time sheets).

Ms. Brewer alleges in her Complaint that Ms. Cooper, the Senior Human Resources Manager at·Jefferson–Pilot, controlled the paperwork involved in Ms. Brewer's medical leave. Ms. Brewer

---

**2.** A court's first duty in interpreting a statute is to look to the plain meaning of the statutory language. *S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co.,* 372 F.3d 245, 255 (4th Cir.2004).

**3.** The definition of employer in the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

claims that she submitted medical status reports to Ms. Cooper, and that it was Ms. Cooper who asked Ms. Brewer's doctors to complete medical certification forms. Ms. Brewer also alleges that it was Ms. Cooper who directly accused Ms. Brewer of lying about her medical condition and who fired her. Because Ms. Cooper acted on behalf of Jefferson–Pilot in following medical leave policies and in firing Ms. Brewer, she is an employer under the definition in the FMLA.[4] Accordingly, Defendants' Motion for Partial Judgment on the Pleadings will be DENIED as to the FMLA claim against Ms. Cooper.

## B.

The Defendants next argue that Ms. Brewer has not stated a claim for wrongful discharge. In essence, the Complaint states that Ms. Brewer was terminated in violation of public policy because her termination violated the terms of the FMLA. The Defendants argue that a violation of the FMLA is insufficient to state a claim for wrongful discharge under current North Carolina law.

Under North Carolina law, unless an employee has accepted a definite term of employment, he is an employee "at-will" and may be fired at any time. *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). However, even an at-will employee may not be fired for unlawful reasons or for reasons that violate public policy. *Id.* While there is no set definition of public policy, at the very least, public policy is violated where an employer terminates an employee "in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*,

331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

This district recently addressed the issue of whether a violation of the FMLA constitutes a violation of North Carolina public policy. *See Buser v. Southern Food Serv., Inc.*, 73 F.Supp.2d 556, 566–68 (1999). The court in *Buser* explained that the public policy exception was a narrow one, and it declined to find, absent clear state precedent, that a violation of the FMLA "rises to a level of a public policy concern" sufficient to expand the public policy exception. *Id.* In reaching this decision, the court noted that the employer had not forced the employee to engage in unlawful conduct and that a separate statutory remedy was still available under the FMLA. *Id.* at 567.

After the *Buser* decision, North Carolina enacted the State Employee Federal Remedy Restoration Act ("SEFRRA"), N.C. Gen.Stat. § 143–300.35. Ms. Brewer states in her Complaint that this new statute clearly establishes FMLA violations as violations of public policy. However, the plain language of the statute does not support Ms. Brewer's argument.

The SEFRRA waives state sovereign immunity "for the limited purpose of allowing State employees ... [with some exceptions] to maintain lawsuits in State and federal courts" under four different federal statutes, one of which is the FMLA. N.C. Gen.Stat. § 143–300.35(a). In addition to waiving immunity, the SEFRRA sets monetary limits on the amount of relief a State employee can receive when bringing such suits. N.C. Gen.Stat. § 143–300.35(b). This statute can be compared to other North Carolina statutes which have clearly set out public policy. *See, e.g.,* N.C. Gen. Stat. § 143–422.2 (stating that "[i]t is the

---

**4.** Language in *Keene* suggests that permitting liability against a "mere supervising employee" might lead to a slippery slope of liability. 127 F.Supp.2d at 776–77. However, here Ms. Cooper was acting as more than a mere supervisor.

public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination" based on gender, handicap, etc.). Unlike other North Carolina statutes, the SEFRRA does not purport to set out public policy. Instead, it serves merely to waive sovereign immunity for certain federal claims against certain State employees.

■ For the reasons set forth in *Buser,* this Court declines to hold that a violation of the FMLA creates a public policy exception to at-will employment. The enactment of the SEFRRA does not constitute express policy by the State to the contrary. Accordingly, the Defendants' Motion for Partial Judgment on the Pleadings will be GRANTED as to the wrongful discharge claim.

### C.

Finally, Defendants assert that Ms. Brewer cannot establish her claim for breach of contract because her employment was at-will. As previously discussed, Ms. Brewer is an employee at-will who can be fired without notice unless she can establish that she entered into a contract for a definite term or that she falls within one of the narrow exceptions to at-will employment. Ms. Brewer bases her breach of contract claim on the fact that the Defendants terminated her employment when, under the terms of the company discipline policy as set out in her employee handbook, she should have only been disciplined.

■ Under North Carolina law, an employee handbook or policy manual does not create a legally binding contract between employer and employee unless the terms of the handbook are expressly incorporated into a separate employment contract. *See, e.g., Walker v. Westinghouse Electric Corp.,* 77 N.C.App. 253,

259, 335 S.E.2d 79, 83–84 (1985) (citations omitted); *Norman v. Tradewinds Airlines, Inc.,* 286 F.Supp.2d 575, 585 (M.D.N.C.2003). The language of Ms. Brewer's allegations precludes a finding that she had an express contractual agreement with the Defendants incorporating the terms of the disciplinary program. Specifically, the Complaint states that "[w]hile Plaintiff was an at-will employee, *implied* in that contractual arrangement are the terms and conditions of [Jefferson–Pilot's] progressive disciplinary policy, which is part of the custom and practice of [Jefferson–Pilot] and part of its contract with all of its employees." (emphasis added) (Compl. at 7.)

■ Because Ms. Brewer was an at-will employee without an employment contract expressly incorporating the terms of the employee discipline program, she cannot maintain a breach of contract action against her employers for violating the terms of the company discipline program. Accordingly, the Defendants' Motion for Partial Judgment on the Pleadings will be GRANTED as to the breach of contract claim.

### IV.

For the reasons set forth above, Defendants' Motion for Partial Judgment on the Pleadings will be DENIED as to the FMLA claim against Ms. Cooper, but GRANTED as to the wrongful discharge and breach of contract claims.

### ORDER

For the reasons set forth in a contemporaneously filed Memorandum Opinion, Defendants' Motion for Partial Judgment on the Pleadings [Doc. # 11] is GRANTED in part and DENIED in part. The Motion is DENIED as to the FMLA claim against Defendant Felicia Cooper, and GRANTED