**Edward LENTZ, on behalf of himself and all other employees similarly situated, Plaintiff,**

v.

**SPANKY'S RESTAURANT II, INC., d/b/a Double Nickel Steakhouse; Lisa B. West; and Lady West Enterprises, Ltd., d/b/a Double Nickel Steakhouse, Defendants.**

No. CIV.A. 5:06–CV–285–C.

United States District Court,
N.D. Texas,
Lubbock Division.

May 31, 2007.

Albert Thomas Van Huff, Monshaugen & Van Huff, Houston, TX, for plaintiff.

Fernando M. Bustos, McCleskey, Harriger, Brazill & Graf, Lubbock, TX, for defendant.

## *AMENDED ORDER*

CUMMINGS, District Court.

At the request of counsel for Defendants, the Court has determined that the Order filed May 7, 2007, should be published. To publish the order in proper form, the May 7, 2007 Order is hereby **AMENDED** as follows:

Came on for consideration the following:

(1) Plaintiff's Motion for Notice to Potential Class Members, filed March 26, 2007;[1]

(2) Defendants' Response to Plaintiff's Motion, filed April 16, 2007; and

(3) Plaintiff's Opposed Motion for Leave to File Reply, filed May 2, 2007, which is hereby **GRANTED** and the Reply attached as Exhibit "A" is **DEEMED FILED.**[2]

The Court, having considered Plaintiff's Motion for Notice to Potential Class Members, Defendants' Response, Plaintiff's Reply, and the arguments and authorities supporting the same, is of the opinion that the Motion for Notice to Potential Class Members should be **DENIED.**

## I.

## BACKGROUND AND RELEVANT FACTS

Plaintiff brings this action on behalf of himself and others "similarly situated" to recover for alleged violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (1996). Plaintiff alleges that Defendants, in violation of 29 U.S.C. § 203(m), required Plaintiff and other similarly situated waitstaff to participate in a "tip pool" sharing arrangement with employees who do not customarily and regularly receive tips. On January 23, 2007, Plaintiff filed a Consent to Join Collective Action noticing the Defendants and the Court that Sherman Scholars consented to be a party plaintiff in the lawsuit.

Defendant Spanky's Restaurant II, Inc. d/b/a Double Nickel Steakhouse ("Double Nickel") is in the restaurant business. Specifically, as to Plaintiff's allegations against Double Nickel, Double Nickel is an upper-end steakhouse located in Lubbock, Texas. In his Amended Complaint, Plaintiff has also named Lisa West and Lady West Enterprises, LTD d/b/a Double Nickel Steakhouse. Lady West denies any

---

1. Although Plaintiff's Motion was titled as Plaintiff's *Unopposed* Motion, after substitution of counsel for Defendants, Defendants filed Defendants' Notice of Opposition to Plaintiff's Motion.

2. Plaintiff filed Plaintiff's Reply on April 24, 2007, without first seeking leave of Court. The judge-specific requirements for this Court state that the Court "will entertain only motions and responses but no replies unless

otherwise ordered." *See* Sam R. Cummings, *Requirements for District Judge Sam R. Cummings, available at* http://www.tx nd.uscourts.gov/judges/scummings_req.html (last visited April 24, 2007). Thus, the Court would not have considered Plaintiff's first improperly filed reply or any attachments thereto. However, on May 2, 2007, Plaintiff filed Plaintiff's Opposed Motion for Leave to File Reply.

liability to Plaintiff because Lady West asserts in Defendants' Second Amended Answer that Lady West did not do business as Double Nickel during the time of Plaintiff's employment. Lady West asserts that it is a successor entity to Spanky's II and that during Plaintiff's employment he worked only for Spanky's II d/b/a Double Nickel.

■ Plaintiff alleges that he worked for Defendants as a waiter for $2.13 per hour plus tips. Plaintiff further alleges that he and similarly situated waitstaff were required to share their tip pool with "expediters." [3] Plaintiff, however, makes no allegations whatsoever that he or any other potential plaintiff failed to receive at least the minimum hourly wage required by law while employed at Double Nickel even after the allegedly illegal pooling payouts to those who do not customarily and regularly receive tips. (Pl.'s Am. Compl.) [4] Rather, Plaintiff alleges that he and other tipped employees should be reimbursed for the tip credit he alleges was unlawfully deducted from their wages and used to tip out other employees. Finally, Plaintiff alleges that Double Nickel failed to display the notice required by the FLSA for tipped employees thereby disqualifying Double Nickel from "tip credit" under the FLSA.

Defendants deny that Plaintiff was similarly situated with any other potential plaintiffs in this case. Defendants further deny that Plaintiff was required to share tips with any non-service personnel who do not customarily and regularly receive tips in the local restaurant industry. Defendants admit that expediters were included in the tip pool. However, Defendants deny that these expediters strictly worked in the kitchen and never interacted with customers. Defendants further deny that they failed to display the notice required by the FLSA for tipped employees and deny that they owe any reimbursement.

## II.

### LEGAL STANDARD

■ The FLSA provides that a person may maintain an action on "behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). A representative action brought pursuant to this provision "follows an 'opt-in' rather than an 'opt-out' procedure." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995). District courts have the discretion to implement the collective action procedure by facilitating notice to potential plaintiffs. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Such a notice should be "timely,

---

**3.** It is unclear exactly what duties an expediter performs. However, in previous filings in this case, an expediter has been described as a person who garnishes plates, makes sure the plates are in order by seat number, and organizes the plates/platters for easy, organized, and quick service to the tables by the waitstaff so that the food remains hot (an imperative in the high-end steak business). (Defs.' Mot. for Part. Dism. [# 7] at 4–5) (cited and referenced purely for purpose of aiding in defining an "expediter"). Thus, it can be said that expediters apparently assist the waitstaff in providing efficient and prompt customer service.

**4.** "Nonetheless, an FLSA plaintiff must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).

accurate, and informative." *See id.* at 172, 110 S.Ct. 482.

The Fifth Circuit has recognized two different procedures used by courts to determine whether to exercise discretion in facilitating notice. (Pl.'s Mot. for Notice at 7 (citing *Mooney,* 54 F.3d at 1213)). The Fifth Circuit in *Mooney* found it unnecessary to decide which of the two methods was appropriate. *Id.* (citing *Mooney,* 54 F.3d at 1213).

■ The Fifth Circuit set out the first methodology as a "two-stage class certification." *Mooney,* 54 F.3d at 1213 (citing . *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987)). Under this methodology, the first determination of whether there are "similarly situated" employees is made at the "notice stage," where "the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members." *Id.* at 1213–14. "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" *Id.* at 1214 n. 8 (quoting *Sperling v. Hoffmann–La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988)). Because of the minimal available evidence at this stage, "this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney,* 54 F.3d at 1214. "If the district court 'conditionally certifies' the class, potential class members are given notice and the opportunity to 'opt-in.'" *Id.* The second stage is typically precipitated by a motion for "decertification" by the defendant after discovery is largely complete. *Id.* If the additional claimants are "similarly situated," the district court allows the representative action to proceed. *Id.*

However, if discovery fails to adequately identify a pool of claimants that are "similarly situated," the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. *See id.*

■ The second methodology discussed by the Fifth Circuit, and not excluded, in *Mooney* is the *Shushan* approach. *Mooney,* 54 F.3d at 1214 (citing *Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D.Colo. 1990)). This approach is also called a "spurious class action." *See id.* This approach adopts the view that the "similarly situated" inquiry is coextensive with Federal Rules of Civil Procedure Rule 23 class certification. *Id.* Using this methodology, a court looks at numerosity, commonality, typicality, and adequacy of representation to determine whether a class should be certified. *See Mooney,* 54 F.3d at 1214. "Under the *Shushan* approach, an FLSA or ADEA representative class is completely analogous to a Federal Rules of Civil Procedure Rule 23 class action-except that, under the FLSA or ADEA, potential class members who do not opt-in are not bound by the result." *Kaluom v. Stolt Offshore, Inc.,* 474 F.Supp.2d 866, 871 (S.D.Tex. 2007) (discussing the *Shushan* approach but favoring the *Lusardi* approach).

## III.

## ANALYSIS

Plaintiff has admitted in his Motion that "authorization of notice by this Court remains a matter of discretion." (Pl.'s Mot. for Notice 6.) The Court must determine commonality and typicality under *Shushan,* or similarity of situation under *Lusardi*-both encompass similar principles and neither has been rejected by the Fifth Circuit. This Court finds the *Shushan* methodology to be preferable under the circumstances of this case. But, as discussed below, it makes no difference which

approach is followed because Plaintiff's pleadings and affidavit have failed to show the need for class certification.

*Lusardi Approach*

 "In deciding whether the [Plaintiff has] met the requirements of either the 'spurious' class action procedure or the 'two-step' approach, this court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D.Tex.1999) (citing *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995)). "Further, 'employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses.'" *Id.* (citing *D'Anna*, 903 F.Supp. at 894). The court must satisfy itself that other "similarly situated" individuals justify notice because they desire to opt-in and are "similarly situated" with respect to job requirements and with regard to their pay provisions. *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir.1991).

 Here, Plaintiff has failed to identify potential plaintiffs other than one additional person who has filed notice with this Court. *See Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008 *9 (S.D.Tex. Jan.24, 2007) (discussing and citing authority for the requirement that there should be a showing "that at least a *few* similarly situated individuals seek to join the lawsuit") (emphasis added to distinguish a few from one); *H & R Block*, 186 F.R.D. at 400 (finding no notice where plaintiff failed to identify potential plaintiffs); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361–62 (M.D.Ala.1999) (showing of other plaintiffs who desire to opt-in is required).

Plaintiff has also failed to submit evidence showing anything other than Plaintiff's conclusory allegations contained in the form of his first affidavit. *See Haynes*

*v. Singer Co.*, 696 F.2d 884, 887 (11th Cir.1983) (noting no evidence existed to justify authorizing notice). A factual showing that any potential plaintiffs are similarly situated is required. *D'Anna*, 903 F.Supp. at 894. Defendants have clearly denied that Plaintiff was similarly situated because they assert that Plaintiff's job duties and responsibilities differed from those of other employees whom Plaintiff alleges are potential class members. (Defs.' Second Am. Answer 2 and 4; Defs.' Resp. 6–8.) Moreover, Defendants have moved beyond pleading and provided affidavit evidence by way of Lisa West's Affidavit identifying the differences in Plaintiff's duties as head waiter as opposed to those of other waitstaff. Specifically, Lisa West avers that Plaintiff exercised substantial supervisory duties, including recommendations regarding hiring and firing of employees and training all waitstaff. Lisa West further states in her affidavit that Plaintiff had distinct qualifications and employment skills as well as different responsibilities and was compensated differently. *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586 *5 (N.D.Tex. May 16, 2006) (Solis, J.) (citing with approval *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J.2000) (discussing that dissimilarities between job duties of the named plaintiff and opt-in plaintiffs make certification inappropriate)). Plaintiff's Reply attempts to address Defendants' arguments relating to whether Plaintiff is similarly situated. Specifically, Plaintiff's Exhibit B, the second affidavit by Plaintiff, is an attempt by Plaintiff to rebut Defendants' averments contained in the affidavit of Lisa West. However, Plaintiff's second affidavit (Pl.'s Ex. B) will not be considered by the Court.

The second affidavit by Plaintiff is not only undated by the affiant (Plaintiff), but the jurat is also undated. (*See, e.g.*, Pl.'s

Reply, attached Ex. B.) The second affidavit would technically be invalid as an affidavit because the jurat is insufficient. *See* 3 Am.Jur.2d Affidavits § 10 ("A 'jurat' is generally defined as a certificate added to an affidavit stating *when*, before whom, and where it was made.") (emphasis added). Failure to include the date in the jurat is evidence from the face of the affidavit that the execution may not have been made in the notary's presence. *See id.* at § 11 ("To attack an affidavit on improper execution grounds, there must be either evidence from the witness or notary or from the face of the affidavit showing that the execution was not made in the notary's physical presence."); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir.1994) ("Although [the plaintiff's] additional affidavits were subscribed under penalty of perjury, they were undated. Given the explicit language of the statute, they must therefore be excluded from consideration."); *Cordero–Soto v. Island Fin., Inc.*, 418 F.3d 114, 120 (1st Cir.2005) (finding undated and unsigned affidavit invalid). It is also invalid as a 28 U.S.C. § 1746 declaration because it is undated in any form or fashion. 28 U.S.C. § 1746 (requiring unsworn declaration to be dated); *Jennings v. Nat'l R.R. Passenger Corp.*, 1998 WL 460270, *7 (N.D.Ill.1998) ("Additionally, [the] affidavit contains no date of execution. The court would be justified in striking these affidavits for technical non-compliance with Rule 56(e) and § 1746."). Thus, any averments made in Plaintiff's second affidavit attached to his Reply will not be considered by the Court.

Plaintiff has therefore failed to meet his burden of satisfying the first step under *Lusardi*-that notice should be given because the potential class members are similarly situated. *See Aguirre v. SBC Communications, Inc.*, 2006 WL 964554 *6 (S.D.Tex.2006) (noting some factual and evidentiary support of similarly situated is

required to authorize notice); *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 888 (11th Cir.1983) (same).

*Shushan Approach*

■ Plaintiff also fails to meet his burden under the more stringent *Shushan* approach. Because Plaintiff has failed to demonstrate numerosity, it is not clear that any potential plaintiff would be unable to simply utilize the joinder rules to seek inclusion in this action. Additionally, as argued by Defendants, the Plaintiff has failed to show commonality because he has failed to show how he is "similarly situated" to other potential plaintiffs.

*Other Reasons for Declining to Certify Class and/or Issue Notice*

There is no clear precedent in this circuit or any other circuit that defines expediters as employees who do not customarily and regularly receive tips. Thus, as Defendants have succinctly stated in their Response, this is a matter *res nova* for this Court, and all other courts for that matter. As Defendants argue, to force Defendants to provide Plaintiff with detailed information on all prior and current employees and to request the imprimatur of this Court on a proposed notice to potential class members under the circumstances of this case would be improper. To allow certification on a claim that has never been determined as a violation of the FLSA would unnecessarily burden all parties.

■ Plaintiff's main contention seems to be that no service personnel other than waiters and busboys may share in the tip pool and that expediters do not have enough direct contact with customers to allow for sharing in the tip pool. As noted in other courts, busboys do not necessarily interact directly with restaurant patrons either because a busboy's duties normally do not come into play until the patrons

have concluded their dining experience. Nor does a busboy normally directly receive tips from customers or directly interact with them; yet, busboys are still considered as employees who customarily and regularly receive tips.[5]

■ "[T]ip pools in which some employees receive money from the pool without contributing to it are not per se invalid." *Davis v. B & S, Inc.*, 38 F.Supp.2d 707, 717 (N.D.Ind.1998) (citing *Kilgore*, 160 F.3d at 301–02 (upholding a tip pool in which certain employees derived their tip income solely from the tip pool; these employees were not allowed to take tips from customers and therefore had no tip income to contribute to the pool)); *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 801–03 (E.D.Ark.1990) (upholding a mandatory tip pool that benefitted a maitre d' who did not receive tips himself or contribute to the pool; waitstaff contributed 40 percent of the tip income to the pool); *Marshall v. Krystal Co.*, 467 F.Supp. 9, 13 (E.D.Tenn.1978) (finding that waiters, bus persons, and bartenders were permitted to derive their tip income from a tip pool); 29 C.F.R. § 531.54 (noting tip pools may include employees such as busboys). "It is customary for waiters/waitresses to receive gratuities and share them with the busboys/busgirls *who assist in serving the patrons.*" 1997 WL 998047 (DOL Wage–Hour Op. Letter) (emphasis added); *Louie v. McCormick & Schmick Restaurant Corp.*, 460 F.Supp.2d 1153, 1160–63 (C.D.Cal.2006) (recognizing and citing ample authority under California law for the fact that *service employees* are entitled to share in a tip-pooling arrangement even if that employee was not the one to wait on the tipping patron because restaurants should be allowed to implement such a widespread practice to ensure that all service employees share equitably in gratuities).

It is also unclear if Plaintiff is alleging that all of the amount of the tip-out given to other employees should be reimbursed because it is unclear if any of the tip pool was given to hosts or bartenders. It may be that Plaintiff is alleging that these positions are not entitled to tip pool sharing-a position clearly at odds with precedent and congressional intent on the issue. *See* 1997 WL 998047 (DOL Wage–Hour Op. Letter) (discussing congressional intent); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 300–02 (6th Cir.1998) (finding hosts properly included as tipped employee because they are engaged in occupation which customarily and regularly receives more than $30 a month in tips).

■ Plaintiff's claims also consist of a claim for failure "to display the notice required by the FLSA for tipped employees." Though Plaintiff alleges that Double Nickel "failed to display the notice required by the FLSA for tipped employees," it is not clear that notice must be "displayed." *See Davis v. B & S, Inc.*, 38 F.Supp.2d 707, 719 (N.D.Ind.1998) (finding that notice can also be conveyed to employees through an individual co-worker because other courts have found that an employer may meet the notice require-

---

**5.** Nothing in the statute specifically requires that an employee who shares in a tip pool interact directly with customers. *See* 29 U.S.C. § 203(m). If there are any agency interpretations to the contrary, deference to such interpretations are "not appropriate where the agency's interpretation is not supported by the plain language and/or purpose of the statute or regulation at issue." *Platek v. Duquesne Club*, 961 F.Supp. 835, 839 (W.D.Pa.1995); *see also* 29 C.F.R. § 531.25 ("The ultimate decisions on interpretations of the Act are [to be] made by the courts."); *Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1026 (10th Cir.1993) (noting the nonbinding, persuasive nature of Wage and Hour Administrator Opinion Letters).

ment (1) by simply providing conforming written materials to its employees, (2) by simply providing its employees with a file folder containing the relevant information or by prominently displaying a poster, or (3) by making the employees aware of the existence of the tip credit or its amount and that it intends to treat tips as satisfying part of the employer's minimum wage obligation); 29 U.S.C. § 203(m) (using terminology "unless such employee has been informed"). The Affidavit of Lisa West states that Plaintiff, as head waiter, trained the waitstaff on Double Nickel's policies, including the tip pool and the tip credit. (Defs.' App. in Supp. of Resp. at 2.) "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749 * 19 (S.D.N.Y.2006) (citing *Kilgore*, 160 F.3d at 298).

Finally, it appears to the Court that Plaintiff's request for notice may be too broad. Defendants have asserted that Plaintiff worked only for Spanky's Restaurant II, Inc. d/b/a Double Nickel Steakhouse and that Defendant Lady West Enterprises, LTD d/b/a Double Nickel Steakhouse and Lisa B. West are not entities which ever employed Plaintiff. (Defs.' Second Am. Answer 2.) Specifically, Lady West Enterprises, LTD asserts that it is a successor entity to Spanky's II and that Plaintiff only worked for Spanky's II during his employment at Double Nickel Steakhouse. (*Id.*) Moreover, Plaintiff's Amended Complaint makes no mention of dates of employment for himself or any other potential plaintiff. Thus, the dates set out in the proposed notice have no basis in the Amended Complaint. As such, the proposed notice may be too broad in the dates for employment by potential plaintiffs.

## IV.

## CONCLUSION

 Therefore, for the above-stated reasons and for the reasons argued by the Defendants, the Court finds under the facts of this case that notice to potential class members would be improper at this time. In exercising its discretion, the Court finds that Plaintiff has failed to show that notice is required under the circumstances of this case. Plaintiff's Motion for Notice to Potential Class Members is **DENIED.**[6]

SO ORDERED.

---

**6.** "Thus, while the standard at this stage is lenient, it is not automatic." *Badgett v. Texas Taco Cabana, L.P.*, 2006 WL 2934265, *2 (S.D.Tex. Oct.12, 2006). "[T]here were 115 FLSA cases filed in 2005 in the Southern District of Texas purporting to be 'collective actions.' Only seventeen, however, were certified as appropriate for collective action status." *Id.* at *2 n. 6.